LADY BEAUTIFUL, INC., *v.* ZURICH INS. CO.

(No. 777589—Decided September 27, 1968.)

Common Pleas Court of Cuyahoga County.

*Mr. Moses Krislow,* for plaintiff.
*Mr. Richard J. McGraw* and *Messrs. Jamison, Ulrich, Johnson, Burkhalter & Hesser,* for defendant.

McMONAGLE, J.  A jury was waived and this matter was submitted for decision by the court on the pleadings, a stipulation of facts and briefs by counsel for both sides.

The plaintiff is a corporation that had been engaged in the operation of a beauty parlor in Cleveland, Ohio.  Defendant, Zurich Insurance Company, had issued to the plaintiff a comprehensive liability insurance policy in which it insured plaintiff against general liability claims arising out of its ownership and operation of the beauty parlor but excluding coverage for professional liability claims.

Defendant agreed in its policy to pay, on behalf of the plaintiff, all sums which the plaintiff became legally obligated to pay as damages because of injury resulting from its ownership, management or operation of its beauty parlor, except "* * * injury * * * due to the rendering of or failure to render any cosmetic * * * services or treatments,"

The clause under which the defendant claims the non-coverage is captioned "Exclusion of malpractice and professional services." It reads as follows:

"It is agreed that as respects any classification stated below or designated in the policy as subject to this endorsement, the policy does not apply to injury, sickness, disease, death or destruction due to the rendering of or failure to render any cosmetic, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments."

For example: If injury resulted from negligence of plaintiff's porter in the performance of his duties, this policy applied. If injury resulted from the negligence of a beauty operator in the rendering of or the failure to render any cosmetic (professional) services or treatments, the policy did not apply.

The policy was in effect on August 29, 1959. On that day Geraldine McCormick Targosky was a customer in the beauty parlor of the plaintiff; she was there to receive a permanent wave; the necessary preparatory steps having been completed, chemicals were applied and the hair was set by an operator of the plaintiff; an electric dryer was then placed over Mrs. Targosky's head by the operator who turned on the heat by means of a switch and set the heat setting knob at normal.

(Stipulation)

"Approximately fifteen minutes after the hair dryer was turned on, it was observed that flames and sparks were emitting from the dryer and Targosky suffered personal injuries as a result. It is stipulated that there was no negligence in the turning on of the hair dryer or in the setting of the knob.

"The electric hair dryer which allegedly caused the injuries to Targosky was never examined by an expert on behalf of any of the parties to this litigation or the parties as to case No. 743375. An expert consulted by Lady Beautiful would testify if called here that in his opinion the fire in the hair dryer was probably caused by a short circuit in the hair dryer."

Zurich denied coverage. After prior notice of its intention to do so had been given to Zurich, Lady Beautiful employed its own counsel to defend the ensuing lawsuit (case No. 743375) and effected a settlement of it for $1,000. The plaintiff incurred attorneys' fees and expenses in the amount of $1,250. It is stipulated that the $1,000 settlement and the $1,250 counsel expense are reasonable.

The court finds it to be a fact that the sole proximate cause of Mrs. Targosky's injuries was a short circuit in the hair dryer; that the short circuit resulted from negligence of the plaintiff; that the occurrence itself was in the *"res ipsa"* class of cases where the fact of negligence may be inferred from the happening itself.

Was the injury to Mrs. Targosky "due to the rendering of * * * any cosmetic * * * services?", to wit, a permanent wave—including the hair drying?

Unquestionably the injury was sustained *when* the operator was rendering a cosmetic service. However, this is not to say an injury was sustained *"due to* the rendering of * * * any cosmetic * * * services."

It is interesting to note that the quoted clause excludes services that are somewhat akin to limited medical practices—"massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments."

A consideration of some hypothetical situations in which injury is sustained when a medical, surgical or other professional service is being rendered by a person of a class which usually procures malpractice insurance may be of assistance in deciding the question presented here.

Assume that when a surgeon is performing an operation in his office a short circuit occurs in the lighting fixture providing the illumination for the operation and a part of the fixture falls and severely cuts the patient in an area away from the site of the operation. The operation itself was successful. Light that is provided by the light fixture is, of course, necessary for the performance of the operaton. The surgeon—the owner of the fixture—would be liable to respond in damages.

The injury obviously was due to some negligence in

the maintenance of the electrical device as distinguished from a failure of the surgeon to exercise that degree of care, skill, and diligence in the performing of the operation that is ordinarily exercised by surgeons in the same or a similar locality. It would not be expected that his malpractice insurance would cover the injury but that his comprehensive liability would provide insurance protection.

Assume A, an attorney, has prepared a divorce petition to be filed for C, his client. C is in the process of reading the petition in A's office prior to signing it. A provides a reading lamp under which he seats his clients so that they may easily discern the hieroglyphics contained in his professional handiwork. C has been so seated and is in the process of reviewing the legal document with A when a short circuit occurs in the lamp and causes severe burns to C. Was this an injury due to A's failure to exercise ordinary care as a lawyer, that is, to exercise that degree of skill, care and diligence ordinarily exercised by lawyers in the performance of their professional duties so that his malpractice insurance carrier should respond to the claim of C for damages as a result of sustaining personal injury? We think not.

We are not concerned in this action with the plaintiff's obligation to respond in damages to Mrs. Targosky. The negligence of one or more of plaintiff's servants was the proximate cause of her injuries. Was that negligence of the malpractice or professional type, or was it of the nonprofessional type?

It is the finding of the court that Mrs. Targosky's injuries did not result from professional malpractice by plaintiff's operator but did result from the failure, by one or more of plaintiff's employees, to exercise ordinary care in the maintenance and upkeep of its equipment used in its business; that although Mrs. Targosky's injuries were sustained while the operator was rendering a cosmetic service they were not due to the rendering of that professional service.

Judgment will therefore be entered in favor of the plaintiff as prayed for in its petition.